## JAMES BENNET vs. THE CAMDEN AND AMBOY RAIL ROAD AND TRANSPORTATION COMPANY.

In construing the words " good cause shewn," in the fourteenth section of the act incorporating the Camden and Amboy Railroad and Transportation Company, this

Bennet *v.* Rail Road Co.

court will not apply the rules and doctrines on the subject of new trials or setting aside reports and awards of referees and arbitrators.

If the party would go back to the proceedings of the commissioners, if he complains of any thing unfair or unlawful in the mode of their appointment, or in the proceedings prior thereto, he must bring his case before this court by certiorari, or in some other manner in the due course of law.

Mistake, irregularity, or even fraud in the proceedings, previous to or in the appointment of the commissioners, is not "good cause" to set aside their report.

The following circumstances amount to "good cause" to set aside the report of commissioners on the application of the land owner :

1st. If the commissioners have not taken and subscribed an oath or affirmation before some person duly authorized to administer an oath, faithfully and impartially to examine the matter in question, and to make a true report, &c. as is directed in the act.

2d. If a notice, such as is required in the act, of the time and place of the meeting of the commissioners, is not given to the party, and for want of which, he has been prejudiced in his claims. Or if the commissioners did not meet at the time and place appointed, but at some other time or place, without due notice to, or the consent of the party; so that he had not a fair opportunity of being heard, and of presenting his claims.

3d. If the commissioners did not " view and examine " the lands and materials, but made their report without such view and examination.

4th. If the commissioners, or any of them, acted with partiality or with corruption.

5th. If mistake of law or fact intervened on the part of the commissioners, as to their powers or duty, or in relation to the quantity and value of the land, and such mistake is made manifest.

6th. If upon the whole matter, there should be reasonable grounds to apprehend that justice *may not* have been done, and the land holder is willing to take the hazard of paying costs, which by the statute, he must pay, if the jury do not assess his damages at more than the commissioners did.

If the facts before the court furnish strong reasons to apprehend that justice has not been done between the parties, this court will set aside the report of the commissioners, and order such proceedings to be had, as the statute directs in such cases. The jury, who may be impannelled to pass between the land owner and the company, ought not to be at all influenced by the fact that the court have set aside the report of the commissioners.                     CHIEF JUSTICE.

The objections that the judge appointed the commissioners, not on the day men-

Bennet *v.* Rail Road Co.

tioned in the notice that was served, but at a day subsequent thereto, without any written notice of the adjournment ; that he received in evidence of the service of notice, an affidavit made before a person who did not appear to be legally qualified to administer an oath ; that the description of land taken from the land owner, as presented to the judge, and laid before the commissioners, did not include all the land taken from him, but left out a part that must become the subject of another valuation and assessment ; that the notice which was served on him, of the meeting of the commissioners, specified the time when they would meet at a place other than on his land, for a valuation and assessment of his damages, cannot be inquired into upon an application to set aside the report of commissioners. Such objections can be inquired into in no other way than upon certiorari. The application to set aside the report, must rest entirely upon evidence shewing the inadequacy of the compensation. The regularity of the proceedings would have to be all admitted, in order to form such an issue as is contemplated under the act incorporating this company.

Whenever the legislature order lands to be taken for a public highway, and directs that compensation shall be made to the owners of the lands for its value and damages, such owners may always consider themselves as distinguished in favor above their fellow citizens. I deem the law in question to be entirely constitutional, and eminently just.          Justice Ford.

----

This was an application made to the court by James Bennet, to set aside the report of commissioners appointed under the provisions of the act incorporating the Camden and Amboy Rail Road and Transportation Company, passed the 4th of February, 1830. The sections of the act are in these words, " That when the said company, or its agents, cannot agree with the owner or owners of such required lands or materials for the use or purchase thereof, or when by reason of the legal incapacity or absence of such owner or owners, no such agreement can be made, a particular description of the lands or materials so required for the use of the said company, in the construction of the said roads, shall be given in writing, under the oath or affirmation of some engineer or proper agent of the company, and also the name or names of the occupant or occupants, if any there be, and of the owner or owners, if known, and their residence, if the same can be ascertained, to one of the justices of the Supreme Court of this state, who shall cause the said company to give notice thereof to the persons interested, if known, and in this state, or if unknown or out of this state, to make publication thereof, as he shall direct, for any term not less than twenty days, and to assign a particular time and place

for the appointment of the commissioners hereinafter named; at which time, upon satisfactory evidence to him of the service or publication of such notice aforesaid, he shall appoint, under his hand and seal, three disinterested, impartial and judicious freeholders, not resident in the county in which the lands or materials in controversy lie, or the owners reside, commissioners to examine and appraise the said land or materials, and to assess the damages upon such notice to be given to the persons interested, as shall be directed by the justice making such appointment, to be expressed therein, not less than twenty days; and it shall be the duty of the said commissioners, having first taken and subscribed an oath or affirmation before some person duly authorized to administer an oath, faithfully and impartially to examine the matter in question, and to make a true report, according to the best of their skill and understanding, to meet at the time and place appointed, and proceed to view and examine the said lands or materials, and to make a just and equitable estimate or appraisement of the value of the same, and assessment of damages; and after taking into view the benefits that will result from the rail road, to the owner or owners of the lands or materials, shall report what sum, if any, shall be paid by the said company, for such land or materials and damages aforesaid; which report shall be made in writing under the hands and seals of the said commissioners, or any two of them, and filed within ten days thereafter, together with the aforesaid description of the land or materials, and the appointment and oaths or affirmations aforesaid, in the clerk's office of the county in which the land or materials are situate, to remain of record therein, which report, or copy thereof, certified by the clerk of said county, shall, at all times, be considered as plenary evidence of the right of the said company to have, hold, use, occupy, possess and enjoy, the said land or materials, or of the said owner or owners, to recover the amount of said valuation, with interest and costs, in an action of debt, in any court of competent jurisdiction, in a suit to be instituted against the company, if they shall neglect or refuse to pay the same for twenty days after demand made of their treasurer, and shall from time to time constitute a lien upon the property of the company, in the nature of a mortgage; and the said justice of the Supreme

Bennet *v.* Rail Road Co.

Court shall, on application of either party, and on reasonable notice to the others, tax and allow such costs, fees, and expenses to the justice of the Supreme Court, commissioners, clerks, and other persons performing any of the duties prescribed in this section of this act, as they or he shall think equitable and right, and to order and direct by whom the same shall be paid, under the circumstances of the case."

" That in case the said company or the owner or owners of the said land or materials shall be dissatisfied with the report of the commissioners named in the preceding section, and shall apply to the justices of the Supreme Court, at the next term after the filing of the said report, the court shall have the power, upon good cause shown, to set the same aside, and thereupon to direct a proper issue for the trial of the said controversy, to be formed between the said parties, and to order a jury to be struck, and a view of the premises or materials to be had, and the said issue to be tried at the next Circuit Court, to be holden in the said county, upon the like notice, and in the same manner as other issues in the said court are tried ; and it shall be the duty of the said jury to assess the value of the said land or materials and damages sustained, having regard to the benefits aforesaid ; and if they shall find a greater sum than the said commissioners shall have awarded in favor of the said owner or owners, then judgment thereon, with costs, shall be entered against the said company, and execution awarded therefor ; but if the said jury shall be applied for by the said owner or owners, and shall find the same or a less sum than the company shall have offered, or the said commissioners awarded, then the said costs to be paid by said applicant or applicants, and either deducted out of the said sum found by the said jury, or execution awarded therefor, as the court shall direct : *Provided*, that such application shall not prevent the company from taking the said land or materials upon the filing of the aforesaid report."

At the last term, *W. Halsted* argued in support of the application, and *J. S. Green* and *S. L. Southard*, contra ; and at the present term, the following opinions were delivered.

HORNBLOWER, C. J. The legislature after having prescribed the mode in which, in case of disagreement between the company and the owners of land, the damages sustained by the lat-

ter, should be assessed, proceed in the fourteenth section, to enact, that in case the company or the owner or owners of land or materials, shall be dissatisfied with the report of the commissioners, and shall apply to this court at the next term after filing the report, " the court shall have the power, *upon good cause shewn,* to set the same aside; and thereupon to direct a proper issue for the trial of the matter," &c.

James Bennet's damages were assessed by the commissioners appointed for that purpose, at four hundred and fifty dollars. He is dissatisfied, and has applied to this court to have the report set aside, and that such proceedings may be had as in such case the statute directs.

Upon the argument of the rule in this case, numerous exceptions were taken to the regularity of the previous proceedings. I mean as to the appointment of the commissioners in reference to the notice for that purpose, the time and manner of making the appointment, &c. These objections were elaborately discussed, and ably argued on both sides.

The great and primary question, however, to be settled by the court, is, what is " good cause " within the meaning of the act, and upon which the court may set aside *the report?* When that is once ascertained and settled, the next inquiry will be, whether the applicant has shewn such good cause?

I will first state negatively, what I do *not* consider " good cause " for this court to set aside the report of the commissioners upon this summary application.

Let it be remembered that the authority given to the court, is confined to the case of an application by a party dissatisfied with *the report of the commissioners,* to set aside that *report.* Whatever informalities or errors may have been committed in the incipient measures and in the form and manner of appointing the commissioners; and however fatal such objections might prove, if they were properly brought before the court, we cannot inquire into them on motion. I mean to say, if the dissatisfied party has no ground of complaint, except that some error or irregularity had been committed in the proceedings leading to, or in the appointment of the commissioners, we cannot hear him or give him any relief in this summary way. Our jurisdiction upon this motion, *is statutory;* and in order to entitle him

self to our aid in this way, he must be dissatisfied, not with the manner in which the commissioners were appointed, *but with the report* of the commissioners; and it is that, and that only, we are authorized to *set aside,* on " good cause " shewn.

Nor will it do for the party to say, I am dissatisfied with the report, *because* the commissioners were not properly appointed; for though the court may be satisfied they were not appointed in strict conformity with the law, yet, if upon looking into the commissioners' proceedings, we find *them* regular, if due notice was given, if the commissioners were duly sworn, if they viewed the premises, heard the parties, made an assessment and reported accordingly, all in due form, and if no evidence was laid before us of *mistake, surprize* or *fraud,* no reasonable ground to believe that justice has not been done to the complaining party, we cannot set the report aside.

If the party would go back of the proceedings of the commissioners, if he complains of any thing unfair or unlawful in the mode of their appointment, or in the proceedings prior thereto, he must bring his case before this court by certiorari, or in some other manner in the due course of law, before he can invoke our aid. On motion, we can hear and do nothing but what the statute itself has authorized us to hear and determine on motion. Suppose we should set this report aside, and direct a trial by jury, on the ground of some error in the appointment of commissioners or in some proceedings antecedent thereto; what would be the effect of such trial? It would not cure the error—that would remain. It would be like granting a new trial, *because* the declaration is defective. It would be erecting a new fabric upon a rotten foundation, the *whole* of which might be prostrate as soon as completed.

My opinion then is, that on this occasion, we cannot go back and inquire into the regularity of the appointment of the commissioners or of the proceedings prior thereto. If no commissioners were lawfully appointed, no harm is done, and there is no ground of complaint. If commissioners were appointed by one of the justices of the Supreme Court, that appointment must stand, until set aside by due course of law, though the acts of those commissioners may be reviewed in this court, on motion, and be set aside or affirmed. In short, I mean, that

mistake, irregularity or even fraud, in the proceedings previous to, or in the appointment of the commissioners, is not "good cause" to set aside their report.

After saying thus much, it can hardly be necessary for me to add, that the grounds upon which this court can interfere, must be something touching the merits of the controversy, something that has been done or omitted to be done, actually or legally prejudicial to the party, subsequent to the appointment of the commissioners.

What then within this limitation, is such "good cause" as the legislature contemplated would be sufficient to set aside the report? It will hardly be safe to respond to this general question by so general an answer, as to say, that whatever would entitle a party to a new trial, or whatever would justify the court in setting aside the report of referees or the award of arbitrators, would be "good cause" within the meaning of the statute under consideration. The analogy may not be found to *hold* good throughout, between the case before the court, and the settled rules and doctrine on the subject of new trials, or setting aside reports and awards of referees and arbitrators.

I prefer therefore to specify the grounds on which I would feel myself authorized to *exert* the power vested in the court by the act of Assembly, and then inquire whether any of those grounds exist in this case.

Before doing so, however, and that I may do it intelligently, let us consider the nature and origin of this controversy. Who are the parties, what are their relative rights and duties, and to what extent are public interests involved in the case?

The party resisting this motion is a company chartered by the legislature of this state, to construct and erect a rail road from Camden and Bordentown to Amboy, with power to enter upon the lands of individuals to make their surveys and locate the road, and ultimately to take possession of and use such lands and the materials found thereon, for the purposes of a rail road; they making such compensation to the owner as may be agreed upon by the parties. In case of disagreement between the parties, the amount of compensation to be fixed by commissioners to be appointed in the manner directed in the act. All discussion upon the constitutionality of the law, was, to say the least, pru-

dently waived on the argument; and for the purposes of this decision, therefore, no doubts upon that point are to be entertained. Nevertheless, the rights acquired by the company, as against the several landholders, are not unqualified, they do not stand upon the footing of *meum* and *tuum*. Nor is the landholder to be subjected to the strict rules by which his rights would be determined, if he were asserting doubtful and unestablished claims. The legislature intended that the landholders should have a just and equitable compensation. Nor ought they to be tied down to what a purchaser would be willing to give, or a seller to take. The law takes away the land against the consent of the owner, except so far as that assent is implied in all constitutional legislation ; and when the law compels the owners to yield up their lands and improvements, to which they may feel attachments beyond their intrinsic value, it ought at least to afford them the satisfaction of knowing that their rights have been duly respected, and fairly and impartially considered.

But, on the other hand, it is to be recollected, that the public have an important interest in the erection of rail roads, canals, and other enterprises of that kind, which seem to be characteristic of the age; at least, this is the theory, or philosophy of this kind of legislation ; and but for the actual or supposed nationality of the measure, it would be against the fundamental principles of government thus to invade private and vested rights. In legal contemplation, therefore, private property is taken in this case, for an important public use ; and this public benefit ought not to be sacrificed to individual cupidity or embarrassed by listening to every technical and unsubstantial objection.

In view of these principles, I proceed to specify, what would amount to "good cause" to set aside a report on the application of a landholder; and,

1st. If the commissioners have not taken and subscribed an oath or affirmation before some person duly authorized to administer an oath faithfully and impartially to examine the matter in question and to make a true report, &c. as is directed in the act.

2d. If a notice, such as is required in the act, of the time and place of the meeting of the commissioners, is not given to the party, and for want of which he has been prejudiced in his

claims. Or if the commissioners did not meet at the time and place appointed, but at some other time or place, without due notice to, or the consent of the party, so that he had not a fair opportunity of being heard and of presenting his claims.

3d. If the commissioners did not " view and examine " the lands and materials, but made their report without such view and examination.

4th. If the commissioners or any of them acted with partiality or with corruption.

5th. If mistake of law or fact intervened on the part of the commissioners as to their powers or duty, or in relation to the quantity and value of the land; and such mistake is made manifest, or

6th. If upon the whole matter, there should be reasonable grounds to apprehend that justice *may not* have been done, and the landholder is willing to take the hazard of paying costs, which by the statute he must pay, if the jury do not assess his damages at more than the commissioners did.

And there may be other circumstances that would amount to " good cause " within the spirit of the act for setting aside the report, although they would not constitute a ground for a new trial at law.

The next inquiry is, do any of the " good causes " above specified, exist in this case? First as to notice—

1st. It is said, there is no proof before the court, of service of notice on Bennet, of the time and place of the commissioners' meeting, &c. If the fact of notice rested upon the affidavit, a copy whereof appears on the record, I should say, there was no legal proof of the due service of it. It does not appear where it was made, nor that it was made before any person authorized to administer an oath. *The state* v. *Hutchinson,* 5 *Halst.* 242; 3 *Maule & Sel.* 493; 1 *Burr's Tri.* 97, 98. But it appears from the deposition of Bennet himself, that he knew the day; that the notice was for the ninth of April, and that he was prepared to attend with his counsel. But again, it is said the notice itself was not a lawful one. It was a notice that the commissioners would meet at Bordentown, in the county of Burlington, on the ninth of April, to proceed to view, &c. Bennet's lands lay in South Amboy, in the county of M ddle-

sex, about thirty miles, it is said, from Bordentown. When were the commissioners to be on his land to view and examine it? If the act means any benefit to the landholder by this notice, it means, that he shall have notice of the time when they will view and examine his land; not that he shall have notice when the commissioners will leave home to proceed to do so, or when they will meet at some distant place, to set out from thence to view, &c. The act says, it shall be *upon such notice a shall be directed by the justice appointing the commissioners.* The nature of the notice is then to be prescribed by the justice; the time, twenty days, is fixed by the act. What then were Justice Drake's directions on this point? Why, that they should give Mr. Bennet twenty days notice in writing, " *of the time and place for such examination, appraisal and assessment.*" Instead of this notice, if given at all, is given to Bennet, that the commissioners will meet at Bordentown on the ninth of April, " *to proceed to view, &c.*"—To proceed, when? On that or on some other day? And when were they to reach his land? He was entitled to be present at the view of his land, and to have the benefit of counsel. Must he travel with his counsel thirty miles from home, and set out with the commissioners and constitute a part of their suite in their journey towards his land? Or must he and his counsel stand on the premises, and watch their arrival on that or some other day? If in point of fact, the landholder suffered no prejudice, if he was present with the commissioners on his land, joined in the view, was heard by himself or his counsel, and made no objection to the insufficiency of his notice, I would not, in the absence of all other " good causes," set aside the report. But in this case, Mr. Bennet was prejudiced; he had retained counsel; they made their calculations that the commissioners would be there by the tenth, and they waited on the ground till five o'clock in the afternoon; but the commissioners did not come till his counsel had left there to return home. When they came on the ground, Bennet admits that he exhibited to the commissioners, a statement in writing, of what he considered his damages to be; but deposes that he objected to the legality of the proceedings of the commissioners Here then was no acquiescence on his part, no waiver of any illegality of notice or other proceedings. The company pro-

ceeded at their peril; if they thought proper under existing circumstances, to have the assessment made, they had a right to do so. If it proved satisfactory to Mr. Bennet, well and good; if not, he lost no rights, and is entitled to be heard in this court.

The deposition of Bennet was objected to, but I see no good reason for rejecting it upon an application of this kind. It is a summary proceeding, out of the course of the common law, and bears no strict and uniform analogy to any known proceeding. The legislature have given us no rule, they have left us in the dark, and we must go forward with such lights as we can get. It would be hard to reject the affidavit of the landholder, when it can conclude nothing, but at most obtain for him a trial by jury; and that too, at the hazard of paying costs himself.

I would then, upon this ground, *the insufficiency and uncertainty of the notice,* if there was no other, feel strongly inclined to set aside or open this report, and let the landholder have the benefit of an appeal to, and a trial by jury, a tribunal much favored by our law and essential to the security of some of our most valuable rights.

But, independently of that exception, I am prepared in this case, to direct an issue, on the general ground, that the facts before the court, furnish strong reasons to apprehend that justice has not been done between the parties.

It is not necessary to induce the court to interfere with the report on this ground, that it should be proved to our satisfaction, that the commissioners have assessed the damages at too much or too little. I mean to express no opinion on that point; nor ought the jury, who may be empannelled to pass between the parties, to be at all influenced by the fact, that the court have set aside the report, and referred the matter to them on the ground of apprehensions, that the commissioners have not done right. On this part of the case, I have no hesitation in adopting the rule laid down in our books, on the subject of granting new trials; that if the court is satisfied, *there are strong probable grounds to suppose that the merits have not been fully and fairly discussed, and that the decision, is not according to the truth and justice of the case, a new trial ought to be granted.* Such I think is the case in this instance.

I will enter into no details or calculations, but refer myself generally to the facts. The road runs through Bennet's land, the distance of one mile and one quarter; thus requiring, (if the land is worth fencing) two and a half miles of fence to protect it from the highway. It covers sixteen or seventeen acres of his land, runs obliquely across it, leaving a strip between the rail road and turnpike, runs over part of his mill pond, and makes it necessary for him to remove his barn. Two witnesses besides Bennet himself, testify to their belief, that he is injured to the value of from fifteen hundred to eighteen hundred dollars. The commissioners have assessed only to the amount of four hundred and fifty dollars. It may be enough, but it seems to me so improbable, that four hundred and fifty dollars can be an adequate compensation for sixteen or seventeen acres of land, and for making eleven or twelve hundred pannels of fence, that it furnishes to my mind strong probable ground to suppose, that by some mistake or inadvertence, or either for the want of correct information, or under the influence of misrepresentation, the commissioners have failed to reach the justice of this case.

I am therefore of opinion that the report of the commissioners in the case of James Bennet, ought to be set aside, and such proceedings had, as the statute directs in such cases.

Ford, J. An act of the legislature of the fourth of February, 1830, authorized the Camden and Amboy Rail Road and Transportation Company, to locate a rail road as therein mentioned, and deposit a survey thereof in the office of the secretary of the state; it then empowered them to construct the road, and required them to make compensation for the value of the land taken from the owners, and for the damages they might sustain. In case of disagreement about the amount of compensation, it required the company to present a description of the land in writing, under the oath of one of its officers, to a justice of the Supreme Court, and required him to fix a time and place when he would appoint commissioners for settling the compensation; and to cause twenty days notice of the time and place of making such appointment to be served on the owner of the land. It required the commissioners to take an oath or affirmation, to make a just and equitable valuation of the land and assessment of the damages, upon previous notice to the

owner, and to report the allowance under their hands and seals. It then directed the said description of land, the appointment of commissioners, their oath or affirmation, report and proceedings to be filed in the clerk's office of the county where the lands lie, there to remain of *record.* It then provided, that if either party should be dissatisfied with the report of the commissioners, such party might apply to the Supreme Court, who, upon " *good cause shewn,*" might direct an issue to be formed as to the value of the land and damages, and direct a jury to be struck for the trial thereof.

It appears that the company's description of the land taken from Mr. Bennet, makes it amount to sixteen acres, and that the commissioners awarded to him in their report, the sum of four hundred and fifty dollars. Mr. Bennet declares himself not satisfied with this allowance, and shews by affidavits, that beside the value of the land, he must put up eleven hundred pannels of fence to inclose it; that he has had to remove a barn out of the way, and that the road has filled up a small part of his mill pond; he therefore moves to set aside the reported compensation, and to have it referred to a jury. Some of the grounds laid before the court, as " *good causes* " for doing so, are the following :

First. That the judge appointed the commissioners not on the day mentioned in the notice that was served, but at a day subsequent thereto, without any written notice of the adjournment ; Secondly. That he received in evidence of the service of notice, an affidavit made before a person who did not appear to be legally qualified to administer an oath ; Thirdly, that the description of land taken from Mr. Bennet, as presented to the judge and laid before the commissioners, did not include all the land taken from him, but left out a part, that must become the subject of another valuation and assessment; Fourthly, That the notice which was served on Mr. Bennet of the meeting of the commissioners, specified the time when they would meet at Bordentown in the county of Burlington, not when they would meet on his land in the county of Middlesex, for valuation and assessment of his damages.

I am of opinion that the court cannot inquire into any of these objections to the mode of taking the land. The proceed-

ings of the company, of the judge, and of the commissioners, under this act, are filed in the clerk's office of the county of Middlesex, and have there become a record; if they have not been done in conformity to the special powers delegated by this statute, they are liable to be reversed in this court upon certiorari, and they can be inquired into in no other way. This *record*, like all others, even of the lowest tribunals in the state, while it stands unreversed, is of such high and incontrovertible validity in law, that nothing may be alleged or heard against it. As to this application, it is so far from being a measure to set those proceedings aside, that on the contrary, it rests on them as its foundation, and is the strongest affirmance of them; it supposes that the land was taken by a legal proceeding under this act, and all it pretends to ask for, is, a more equitable compensation. If the company has not acquired, by its proceedings under the act, a legal right to the land, it has nothing to make compensation for, and a jury could award nothing against the company in this form of proceeding. These objections all tend to shew a flaw in the company's title and would be much better reasons, if listened to, for diminishing the compensation than for increasing it. But this application to recover the value of the land and damages is an implied waiver of all irregularity in passing the land contained in the specification, and amounts to as great an affirmance, as if Mr. Bennet had conveyed such land by deed; for it professes him to be dissatisfied with nothing but the amount of compensation. Indeed, the regularity of the proceedings would have to be all admitted, in order to form such an issue, as is contemplated under this act. Therefore the alleged irregularities have nothing to do, either way, with the present application; which must rest entirely upon evidence shewing the *inadequacy of the compensation*.

But such evidence is said not to be admissible, against the report of the commissioners, any more than against an award of arbitrators, to which it is likened. The statute however, which is to be our guide, neither likens it to an award, nor limits the court to act according to the strict rules prescribed for awards; but on the contrary, it gives the court an open and general authórity, *for any good cause*, to grant a review of the compensation. The act says, that the owner of the land shall

Bennet *v.* Rail Road Co.

have a *just and equitable* compensation ; and as it gives him an *application* to this court, on *that* point, it implies that this court must form an independent opinion upon it; but even if our opinion should differ from that of the commissioners, we ought not to disturb their report, unless the amount of difference is enough to justify wise men in further litigation and expense.

Declamations against such laws as this, and upon the tyranny of taking away a man's freehold against his consent, for the purpose of making rail roads and canals, ought always to be tested by cool and sober reasoning. The land thus taken away by the legislature, is declared to be for public use ; that is, for a public and common highway for all the citizens, and it is to be applied to that and no other end, for the purpose of increasing, extending, improving and facilitating all their common business, and thereby promoting the public and common prosperity. Whether the legislature hires labor by the day or month, to construct such highway on the land, and lays a general tax on property to defray the expenses, or contracts with a company to build it, and levies a toll on those who use it, to defray the expenses, relates entirely to the mode of making it, and has nothing to do with the point of its being a public highway. Lands for this purpose *have* been taken, under the authority of legislative enactment, ever since the settlement of the state, and that without the consent of the freeholder, without compensation for the value, with little respect to the figure of his farm, leaving his fields in common, till they can be inclosed at his own expen-e, and without any recompense for his damages. Wherever the legislature orders lands to be taken for a public highway, and directs that compensation shall be made to the owners of the land for its value and damages, such owners may always consider themselves as distinguished in favor above all their fellow citizens. If other citizens complain of the unconstitutionaliy and tyranny of a law that takes away their private property for public use without compensation, it is not strange ; but that this favored class should make that complaint is surprising, when they are not only to have a just and equitable value for their land, but a just and equitable allowance for their damages also, to be estimated by disinterested commissioners, selected for their high standing as men of honor, capacity and integrity ;

Bennet *v.* Rail Road Co.

and are moreover guarded by a power vested in this court, if it thinks any mistake has been committed in judgment, to have the compensation reviewed by a jury. I therefore deem the law in question to be entirely constitutional and eminently just. It entitles the owner to the value, according to the average selling price of lands in the neighborhood, of like quality, and also to the damages sustained or likely to be sustained by reason of the road. So much the owner has a just and equitable right to expect under this act, and no more by the terms of it.

The commissioners have awarded to Mr. Bennet, the sum of four hundred and fifty dollars, without expressing what part of it is for the value of the land, or whether any part of it is for damages. Possibly they did not think, upon their oaths and consciences, that the road did any damage to the rest of the land. We may presume, as to the mill pond, and the removal of what is called the barn, that they were of little consequence, from the slight notice that is taken of them in the affidavits; and that we ought not to involve the parties in further litigation and expense on these accounts. The question that principally exercises my mind, is, whether they allowed any competent sum for *fencing the road.* One witness, who however sets the sixteen acres at the *highest* price, makes the land itself amount to more than all that the comissioners have awarded. Another witness who puts that quantity at twenty dollars an acre, which is the lowest price mentioned, makes the land amount to three hundred and twenty dollars, and consequently leaves only one hundred and thirty dollars for inclosure. If I could see that eleven hundred pannels of fence had been allowed for, at a reasonable rate, over and above the value of the land, I should think there was no good cause in this case, for referring the matter to a jury. I would not dare to say, upon my conscience, that such a rail road is a damage to the owner of this estate, provided he is paid for the value of the land and allowed a reasonable sum for fencing the road. Highly as every man of worldly *wisdom* must prize a farm, having such a road as this upon it, still, if he had a common share of worldly *prudence* he would not take it *without* a reasonable inclosure on account of the danger that must be incurred by his property and stock. The velocity of a train of cars impelled by steam power, has been known to baffle

the best reason in calculating the time it had to get out of the way, and it would bring destruction on horses, cattle, sheep and hogs when actuated by only a lazy instinct, even in the day time, if lying down, and at night, they must be certain victims. But a fence is a perfect security to a farm, and nothing short of it is so.   It is in my judgment, of the first necessity ; and as I cannot perceive that any thing at all adequate to this object has been allowed, I am of opinion that an issue ought to be formed to be tried by a jury in the manner directed by the statute.

'DRAKE, J. delivered no opinion, as he was prevented by sickness from hearing the argument.

Trial ordered.

CITED in *Vanwickle* v. *C. & A. R. R. Co.*, 2 *Gr.* 163 ; *Peltier* v. *Banking Co., Id.* 259 ; *State* v. *Green*, 3 *Gr.* 90 ; *N. J. R. R. & Tr. Co.* v. *Suydam*, 2 *Harr.* 72 ; *Smith* v. *Abbott, Id.* 361 ; *Somerville & Easton R. R. Co. ads. Doughty*, 2 *Zab.* 505 ; *City of Camden* v. *Mulford*, 2 *Dutch*, 55.